Good morning, Your Honor. May it please the Court, my name is Dan Hanman. I'm here to argue on behalf of Alta-Dena Certified Dairy. If I could, I'd like to reserve two minutes for rebuttal. All right, you have 15 minutes total, and I'll let you know when you have two, but keep track of your time. Thank you, Your Honor. I'd like to focus the vast majority of my argument, if I can, on the issue involving the evidence about Ms. Godinez's missed work in the past and how that affected the jury's verdict and also on the award of front pay. Well, on the front pay, just, there's a Ninth Circuit 2016 case, I don't know how to say it, Tucher v. Woodson. You argue that front pay is an equitable remedy that must be awarded by the court and not the jury. How do you distinguish that particular case? Because that seems where we recognize that under California law, a jury may award front pay. I think a jury can award front pay, but I think a jury, in order to do that, there has to be a finding first. Because the principle behind front pay is that front pay is a substitute when reinstatement is not possible. And the issue of whether reinstatement is possible is something that a judge and not a jury is capable of deciding. And that was what the Traxler case stood for, was that when you're dealing with reinstatement, that is, it's an equitable, reinstatement is an equitable remedy. And if reinstatement is not possible, and that can be largely because there's some type of hostility or animus between the employer, typically you see that in a harassment case or something like that, then. I think, counsel, that you've got a decent case that front pay is equitable in nature, but my problem really is that it can be sent to the jury. The parties can agree to that, right? And in this situation, I don't really see where it was really preserved or presented to the court. So why isn't this an invited error situation? And let me tell you what I'm concerned about. Because the parties worked on and submitted a joint pretrial order stating unequivocally this is going to be a jury trial. There's no indication in that pretrial order that there were equitable issues reserved and that you're asking the court to basically reserve some issues for later determination. There were jury instructions that the party worked on jointly and submitted to the court that covered front pay as well. And the first time this was ever alerted to the court that there may be an equitable issue as to front pay is really in, was it your motion for judgment as a matter of law? And so I don't think that that's really the way to bring it up to the court to tell the trial judge. In all fairness to the trial judge, just say, Your Honor, we're asking that this issue be reserved because it's equitable in nature and then brief it for the court. So why isn't it an invited error situation at this point? It's all done. You asked for a jury trial. You got the jury trial. Yeah, Judge Warren, this is what I would say. And if you, in the Traxler case, I think it sort of spells out the procedure that just as a practical matter that this normally takes. In Traxler it was the same type of thing happened where there was a jury verdict on the issue of front pay. But in the motion for judgment as a matter of law, it was presented to the judge for the judge's, the trial court judge's ability to say, in order to uphold this verdict, in order to find that this award of front pay is viable, I first need to find that reinstatement is or is not possible. And so I think as a practical matter, that is how the issue gets resolved. I don't think that it was invited. I don't think that it was invited. And I think that it was presented to the judge for the judge to say, I need to re-review the record, to be perfectly honest with you. But I believe, I'm very certain that we raised this at some point during the trial and asked the judge to do this. And I thought there was a motion in Luminae, in fact, on this as well. All right. Maybe you can point me to the record where it was really properly preserved when you come back up on rebuttal. Okay. Thank you, Your Honor. But be that as it may, the court could ask the jury to decide the front pay and then accept it as the judge's equitable remedy. And you never offered to reinstate anybody or told anybody that you were going to reinstate him, did you? We didn't. Did Al-Fadina offer reinstatement? No, they did not. You didn't tell the court you were talking about reinstatement. It was a money damages case from the beginning until the end, until then you decided, wait a minute, it's an equitable issue and I might give reinstatement. I mean, that's the first time I've heard this argument about reinstatement, honestly. Respectfully, Your Honor, I think reinstatement's always a possibility and I don't think that the law requires us to. So there are lots of possibilities in every single case. You've got to bring the issue for the court and ask for a ruling. I understand what you're saying. I think the evidence in this case was actually pretty clear that Ms. Godine has liked her job very much. The company, every witness that testified, testified that they liked her very much. It wasn't like a sexual harassment case where there's extreme acrimony, where it's clear that people can't work with each other, that they could never get along and that it's irreconcilable differences between the parties. But she was terminated. Her employment was terminated after a long absence. Okay. On that issue, Your Honor, the big issue that we have is that Ms. Godine's inability to work, her past history of extensive absences from work wasn't allowed, we weren't allowed to present that to the jury. In her deposition and in the documents, it was clear that in almost every year preceding the year that she lost her job, she had missed an extended period of time in 2005, 2006, 2007, 2009, 2011, and 2012. And in the Gotthard case from the Ninth Circuit, the Court said that a plaintiff's past work history can be relevant to calculating an award of future damages. The issue with front pay just in general is that front pay is necessarily a speculative remedy. With back pay, you're looking back in time. So you can say the person missed a certain amount of time. It's finite. We can calculate the precise damages. With front pay, it's necessarily a speculative remedy. Now, in Gotthard, they said that they would not, that the work history was not relevant because in that particular case, the two issues that arose with the plaintiff's past were that the plaintiff had cut their finger on one occasion and that there had been an isolated disciplinary instance. And so they said that in that case, the issues were so isolated and so unique that there was no way that they could, that a jury could possibly conclude that they would affect anything in the future. But in this case, it was much different. There was a much more, there was a history of chronic illness. And if someone with chronic illness is claiming that they're going to be unemployed for a period of time in the future, then necessarily the absences that the employee has suffered in the past are relevant to how Mitigation. Not mitigation, but to measure damages. Exactly, Judge Battaglia. But you're not, you don't, you're not tying that, though, to her claim to begin with, her substantive claim. No, no, Your Honor. Yeah. Just to her damages. That's precisely right. This is purely as to damages. And it is possible that a jury could hear all of those things, that she was absent on all of these times. And it's possible that a jury could conclude, you know, in 2005, that was an isolated incident and so on and so forth. But the jury should have heard that. Wasn't her medical condition litigated during the course of the trial? Her medical condition in 2013, the last year of her employment, was litigated. Was litigated. That was litigated. But her medical condition And her ability to work in the future was not raised during the medical testimony? Well, her, no, it was not. It was not. And why not? And her expert, well, first with the econ expert, her economic expert said he didn't take mitigation into consideration. And that's developed either during direct or cross or both? Correct. What about the medical side? With the medical side Did anybody talk about the medical side? That was precisely what we tried to get into evidence and what the judge did not allow into evidence. Where we specifically asked and frankly we told the jury because we knew in the opening statement because we knew that this was relevant to damages, you're going to hear that in years past. So you're saying you never got in any mitigation evidence? I beg your pardon? You're saying that you never got in any mitigation evidence during the trial? We weren't able to get in that evidence about her past work history. We asked. But other mitigation evidence were Oh, we did get in other mitigation evidence. Yes, mitigation as far as the efforts to find new work Were you the trial counsel? I was, Your Honor. Right. And was it your strategy to basically try this case as both past and future economic damages but then argue that she didn't sufficiently mitigate damages if you lose on the liability? Yes, it was. And we did offer evidence about mitigation of damages about her efforts to find work. It did seem to me reviewing the record that that was your strategy because Altadena specifically asked to put in jury instructions that included front pay issues as well and that you were going to try to mitigate the damages if the jury ruled against Altadena on the liability portion of it. So I still don't understand why you're arguing about the front pay issue here. Maybe I didn't understand your question correctly, Your Honor. But we did argue mitigation. So I view this as two separate and discrete issues. On the issue of front pay, and this is what Judge Battalion was saying, on the issue of front pay, we believe that her past work history, the chronic absences that she had due to medical conditions in the past are relevant to the quantum of front pay that should be awarded. If you miss a month or two of work habitually in the past, it's safe to assume that that will happen in the future. That's issue one. Right. Right. But all I'm asking is that you meant to try the front pay issue to the jury. We did. And we knew it would be tried. On the mitigation issue, Judge Wen, as you were pointing out, we did offer evidence about her efforts to find work after her employment without Altadena entering. It's not the past absent. Just we tried to offer the evidence on the past absences. So why isn't this just a situation of, you know, you put it to a jury and you lost? Well, that's ‑‑ And it's a tough rock to push uphill when you have, you know, it's different when it's summary judgment when people are talking about you had your jury trial, that's what you all wanted, and the jury just didn't buy it. So it's a harder, it's harder to overturn that than if this were summary judgment or something like that. That's unquestionably true. And the standards of review for ‑‑ They get all inferences in favor of the verdict. That's true. But on the issue of the evidence and what was allowed in and what wasn't allowed in, I think that is a different story. And I think that's a different standard. Well, but then you have to show that something that wasn't allowed in would have changed everything, right? So how would that have changed everything? Well, I think it would have led a jury to believe that she was habitually absent in the past for long periods of time and that in the future the same type of thing was likely to happen. The truth of the matter is we won't ‑‑ So why did the court not ‑‑ what was the wane that the court did in saying that why, while it might have some relevance, why did the court not allow it in and what's the standard of review? There was no, on the first question, there was no explanation as to why the evidence wasn't allowed in. We asked the question. We were told to move on. He sustained an objection and we were told to move on. So it wasn't in Lemony. It was right in the trial. Correct. Correct. Okay. Did you try to bring it up otherwise? Yes. And we raised it in post-trial briefing and we raised ‑‑ yes, we did. And what did the court say on that? The court felt that ‑‑ I don't remember off the top of my head, but I believe the court just felt that it was irrelevant. And the reason why, by the way, Your Honor, that this was not an issue of harmless error is we raised it in our opening. The judge didn't let the evidence in. And then in closing argument, they specifically alluded to the fact that we didn't present any evidence about her past work history. So in the abstract, I think you're right, Judge Callahan, that you could say how would you ‑‑ how would a jury ‑‑ how can we, you know, how can we surmise what a jury would have done in that instance? But when we mention it, we're not allowed to produce it, and they specifically point it out in the closing. I think that's a different story. I'd like to ‑‑ I see my yellow lights on. I'd like to reserve my time. Okay. Thank you. Good morning, Your Honor. I'd like to thank you all for your time. I've looked at your calendars. I know you're incredibly busy, so I appreciate your time and attention. My client does, too. Ms. Godinez is here with her husband. As we noted in the brief, this is a case about a woman who worked one job her whole life. She started there in 1979 in high school. She got married when she was there. She had kids when she was there, and she planned to retire there until Altadena fired her. And they did that because of her disability, and a jury unanimously concluded that. So counsel on the other side didn't say anything about this, but I'm interested in the jury question. So talk to me about the jury question. As a backdrop to that, and to answer that question, under California law, reassignment is an accommodation of last resort. So what the evidence would have to show is that she was ‑‑ they concluded she couldn't go to her position before they got that. Now, in the evidence, if you look at ER 19, Ms. Flores, who was the HR person, there was allegedly ‑‑ they talked about offering her a secretarial position, but she admits that when that topic came up, they still hadn't made a conclusion whether they could or couldn't accommodate Ms. Godinez in her position. And that's at 19. So you're saying that the reassignment was never actually offered? The testimony, yes, that's the testimony trial. There was testimony that wasn't offered to her, but it's undisputed that even Altadena's position I just missed it. It's unquestionable that they did offer or did not offer. It's disputed whether they offered. What's undisputed, Altadena admits that when this topic came up about another position, they hadn't decided whether they would or wouldn't let her return to her position. So there really wasn't even evidence for a jury to conclude that an offer of reassignment because it's an accommodation of last resort and they hadn't addressed her position first. But beyond that, the judge who was calling the balls and strikes on this is Judge Lew. He got appointed in 1987. He's been around a long time. I know Judge Lew. Okay. He looked at the instruction, and that is a California forum jury instruction. And it's not an inclusive list. There could be other accommodations. They could have presented a special instruction about an offer of reassignment. That instruction specifically talks about reassignment. And he limited his answer to the specific instruction and not necessarily tailored to what the juror may or may not have been talking about in general. They asked for a definition of that term, and he gave that to them. Yeah. Okay. In regards to the issue. On the Fenprey issue, counsel referenced the possibility of there being a motion in Liminey preserving that issue, asking for a court trial on that. Was that? I don't recall. I was one of the trial attorneys. I don't recall, so I don't have an answer to that, but it's certainly not in the record. But I do want to address that issue of offering evidence about prior absences. And as counsel said, they want to say because she was absent from work in the past for medical reasons, that means in the future she would be as well. But they had doctors on their witness list. They never called them. As a layperson, you can't say because someone was sick in the past, they'll be sick in the future. They didn't have any medical evidence to support a theory that because of past absences she'd be absent in the future. But there was medical testimony, correct? No. No medical testimony at all from either side? No. But there were witnesses that were included in the defense, and there was an independent evaluation of her and all of that? They never did a medical eval. They never did. They had doctors on the list, but they never called them. And the doctors were treating physicians or the doctors were independent? Treaters. They were all treaters, and they never called any of them. Right. And you didn't either because you didn't need to. We called a psychologist, an expert. Okay, and the psychologist, did the psychologist offer any opinions about her future mental health? Obviously he did because you got a big chunk of dough. Right. He talked about the impact of the loss of a job after 34 years. Okay. And nobody asked him any questions about whether she'd be able to continue to work? No. Nice job, by the way. Counsel Faltadina indicated that in closing you used the fact that you commented on the absence of evidence of past work, and that wasn't fair because they attempted to bring it out presumably during cross-examination, and that was the objections were sustained. When you reference in closing the absence of past work, that's what you were talking about? Well, what we were talking about. Well, that's a little bit like you keep out someone's felony conviction, and then when you argue the case, you say, oh, they have a perfectly clean record. That's not fair. I agree. That wouldn't be fair. That wasn't the case here. They had on their witness list treating doctors that could come in and talk about those prior absences, and in their medical opinion that those would occur in the future and she wouldn't be able to work or her work would be limited. They didn't do that. They told the jury that they would call and present evidence about that, but they never called those doctors at all. So what did the objection prevent? He said that he asked a question, there was an objection, and so he couldn't go into it. What did the objection present? They just wanted to present evidence that in the past she had medical absences. Without any expert testimony to explain that, yes, because she had a medical problem in the past, therefore, that medical history would continue in the future. There was no evidence of that. So am I understanding your position to be that they weren't prevented from presenting such testimony, but they couldn't, but the Court denied them doing it in that aspect on cross in asking questions of, I guess it would be your witness, without laying the proper foundation? Exactly, to have doctors come in and say because she had these conditions in the past, it would somehow prevent it from working. And those doctors weren't identified as experts on future damages, and so you could have kept it out anyway. They were just identified as experts on her condition and her past condition. Yes. And somebody would have had to pay them to come in and be an expert and testify about what her future condition would be because they never did that evaluation. Right. They were designated as precipient witnesses. Right. And so they wanted to get into some information that they didn't have any medical testimony or medical support for, and the judge sustained the objection. Right. Nice job. I also wanted to address the issue of the front pay. As Judge Callahan pointed out, the two-ster, and I'm probably butchering the pronunciation. No, we're saying it the same, so. Okay. They talk about how that's an issue for the jury under California law. There's also a California case, Cloud v. Casey, that says the same thing. There's actually California forum jury instructions with juries on wrongful termination claims about front pay and back pay. And the case of Traxler, that deals with organ law and the FMLA. In the FMLA, they specifically list out certain elements of damages that you can recover, and then they say everything else is what a court can award, and they conclude because front pay and back pay weren't listed, it's equitable and only the court can do it. FEHA, the Fair Employment and Housing Act, is different in California. It doesn't list out any of the remedies you can get. So California law is different. And beyond that, the Tammany claim, which is a tort claim under California law, those jury instructions, you can, the jury can award front and back pay. So Alteneida didn't even address that point in their brief. So did you, okay, so what the jury's question was, that question that the district court informed the jury that Alteneida had to actually assign Godinez to an alternate position, and that's, so you're saying that the district court's answer was correct based on the evidence that was in the record, or what, I don't, I'm not sure what. Both. So what was the jury question specifically? The jury question was whether that term meant actually reassign or an offer of reassignment, and what that jury instruction says is reassignment. But it also states that it's a non-exhaustive list of accommodations, and they were asking a specific definition of that word. And Judge Liu talked about how he didn't want to open up a can of worms with having to put other instructions in. They had that opportunity. If that was going to be their argument, that it was an offer of reassignment, they could have done a special instruction. They didn't. But beyond that, the testimony, there's no evidence that an offer of reassignment was made before a decision was decided whether Ms. Godinez could or couldn't go back to her job. In California law, it's in our brief, accommodation, reassignment, it's an accommodation of last resort. So it's not a reasonable accommodation if you hadn't made a decision whether she can continue working her job. So it's technically correct, his definition, and the evidence wouldn't even support a finding for a jury based on Altadena's witnesses saying that when this subject came up, they hadn't decided yet whether they'd let Ms. Godinez continue in her job. Okay. The last point is probably the first point. They talk a lot, we're talking about front pay, back pay, but it was a general verdict, and we put plenty of case authority in our brief that the judge, in his discretion, he can do a general verdict with one line of damages. They talk about how reviewing courts can't speculate about what the jury awarded. They talk about an award of front pay or back pay, but we don't know. It was one line for general damages. They could have given all emotional distress damages. They could have given her a dollar in lost earning. We don't know. We have one line for damages. So it's speculative when we're talking about front and back pay whether that was even awarded. I have no further. My colleagues and I do not appear to have additional questions. You're not required to use all your time. Okay. Thank you. Thank you. Thank you. So what is your best authority for allowing us to consider how the jury arrived at a general verdict? What's your best authority for that? Give me a case. Case law on the general verdict. Well, because you're asking us to consider how the jury arrived at a general verdict, right? Right. So but what's your best authority for that? So if you give me one second, Your Honor, I apologize. Bear with me one second, Your Honor. I apologize. Yeah. It was I apologize, Your Honor. There was a Porterfield case in 1976 from the Ninth Circuit said that the general verdict is perfectly fine. But in that case, the jury the appellate court, the Ninth Circuit, wasn't going to engage in guesswork or speculation as to how the jury arrived at the verdict. In that case, it was something with like a formula where they said the total damages that the expert testified to were X, and they awarded 10 percent of X. That wasn't this case. This case was a lot different. So that case doesn't really help you. No, I think it does help us because in this case there is no formula that needs to be applied. There's just numbers. There's just an expert who testified in year one the damages are A, and year two the damages are B. And literally when the way I figured out what it was was sitting in my car after the trial with my iPhone calculator, I added up those numbers and I came up with the number on the verdict form. It was actually very simple. So there's no I think that the case that that case Porterfield, Porterfield says that basically you don't have to be a detective. We don't have to be a detective. We don't have to sift through breadcrumbs to figure out what the, what the, how the jury reached a number. What it doesn't say is that we have to hide our heads in the sand. And we have to pretend like just issues of just very simple math, adding numbers on a calculator, that that's, that it's, that that means that we're incapable. I'll give you one minute. We've already gone over, so I'll give you one minute to wrap up. Thank you, Your Honor. On the issue of reassignment, which Judge Battalion was, was alluding to, the, the, the judge, frankly, if you read the transcript, he felt handcuffed by the form instruction in California. And he said that it says reassign. And so when the jury asked me what does reassign mean, I have to tell them the instruction says reassign, so that's what it says. It doesn't say an offer to reassign. And that's how the judge did it. He felt handcuffed by it. But clearly, under California law, an offer to reassign is a sufficient form of reasonable accommodation. And we argued to the judge that he should add that to the response to the jury's question in that case, which we think would have been the right thing to do in that particular instance. On the, on the issue of the treating of the... You've already exceeded the time. Oh, I apologize, Your Honor. Thank you. Thank you both for your argument. This matter will stand submitted. This Court will be in recess until tomorrow at 9 a.m. Thank you, both. All rise.
judges: Callahan, Nguyen, Bataillon